Matter of Buck (2024 NY Slip Op 01443)

Matter of Buck

2024 NY Slip Op 01443

Decided on March 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, MONTOUR, OGDEN, AND NOWAK, JJ.

804CA 23-00285

[*1]IN THE MATTER OF THE ESTATE OF KATHRYN W. BUCK, DECEASED. RICHARD M. BUCK, III, PETITIONER-APPELLANT. (PROCEEDING NO. 1.)
JOSEPH J. TIMPANO, TEMPORARY ADMINISTRATOR OF THE ESTATE OF KATHRYN W. BUCK, DECEASED, PETITIONER-RESPONDENT. (PROCEEDING NO. 2.)
RICHARD M. BUCK CONSTRUCTION CORPORATION, PETITIONER-RESPONDENT, STEVEN G. BUCK AND BUCK CONSTRUCTION LLC, INTERESTED PARTIES-APPELLANTS. (PROCEEDING NO. 3.) 

PHILLIPS LYTLE LLP, BUFFALO (CRAIG R. BUCKI OF COUNSEL), AND LAW OFFICES OF DONALD R. GERACE, UTICA, FOR INTERESTED PARTIES-APPELLANTS AND PETITIONER-APPELLANT. 
STEATES REMMELL STEATES & DZIEKAN, UTICA (F. PAUL STEATES OF COUNSEL), FOR PETITIONER-RESPONDENT JOSEPH J. TIMPANO, TEMPORARY ADMINISTRATOR OF THE ESTATE OF KATHRYN W. BUCK, DECEASED. 
THE LAW OFFICE OF KEVIN G. MARTIN, P.C., UTICA (KEVIN G. MARTIN OF COUNSEL), GOLDBAS & LAREAUX, AND GETNICK LIVINGSTON ATKINSON & PRIORE, LLC, FOR INTERESTED PARTIES-RESPONDENTS MICHAEL G. BUCK, LISA BUCK POTTER AND KIMBERLY BUCK DIMICK. 

 Appeals from an order and decree of the Surrogate's Court, Oneida County (Louis P. Gigliotti, S.), entered December 30, 2022. The order and decree, inter alia, denied the petition for probate and granted the discovery petition. 
It is hereby ORDERED that said appeal insofar as taken by interested party Buck Construction LLC is unanimously dismissed and the order and decree is modified on the law and facts by vacating the first decretal paragraph, granting in part the petition of Richard M. Buck, III, and admitting to probate the Last Will and Testament of Kathryn W. Buck and by denying in part the petition of Joseph J. Timpano, temporary administrator of the estate of Kathryn W. Buck, deceased, and striking from the second decretal paragraph the language "GRANTED in all respects" and substituting therefor the language "denied insofar as it seeks rescission of Stock Transfer Acknowledgments dated January 17, 2011 and May 2011 and is otherwise granted" and, as modified, the order and decree is affirmed without costs.
Memorandum: Petitioner in proceeding No. 1, Richard M. Buck, III (Buck), commenced proceeding No. 1 seeking, inter alia, admission to probate of the will of Kathryn W. Buck (decedent). Petitioner in proceeding No. 2, the temporary administrator of decedent's estate, commenced proceeding No. 2 pursuant to SCPA 2103, seeking discovery and return of assets allegedly belonging to decedent's estate from, among others, Buck and interested party Steven G. Buck (collectively, Buck Brothers). The Buck Brothers and interested party Buck Construction [*2]LLC appeal from an order and decree (decree) that, inter alia, denied the petition in proceeding No. 1 based on the determination of Surrogate's Court that decedent's will was duly executed but that decedent lacked testamentary capacity and granted the petition in proceeding No. 2.
Preliminarily, we note that Buck Construction LLC is not aggrieved by the decree, and we thus dismiss the appeal insofar as taken by that party (see CPLR 5511; Walker v Erie Ins. Co., 210 AD3d 1375, 1376 [4th Dept 2022]).
We agree with appellants that the Surrogate erred in denying the petition in proceeding No. 1 insofar as it sought to admit decedent's will to probate, and we therefore modify the decree accordingly. In a will contest, the proponent of the will must establish that the testator possessed testamentary capacity, and the Surrogate must consider whether the testator "understood the nature and consequences of executing a will; . . . whether [the testator] knew the nature and extent of the property [he or] she was disposing of; and . . . whether [the testator] knew those who would be considered the natural objects of [his or] her bounty and [his or] her relations with them" (Matter of Kumstar, 66 NY2d 691, 692 [1985], rearg denied 67 NY2d 647 [1986] [internal quotation marks omitted]; see Matter of Burrows, 203 AD3d 1699, 1700 [4th Dept 2022], lv denied 39 NY3d 903 [2022]; Matter of Alibrandi, 104 AD3d 1175, 1175 [4th Dept 2013]). "Old age and bad health, including dementia, when a will is executed are not necessarily inconsistent with testamentary capacity . . . as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made" (Matter of Makitra, 101 AD3d 1579, 1580 [4th Dept 2012] [internal quotation marks omitted]; see Alibrandi, 104 AD3d at 1175-1176). "The determination of the Surrogate, who presided at the trial and heard all of the testimony, is entitled to great weight," particularly where the case "hinge[s] on the credibility of the witnesses" (Matter of Chiurazzi, 296 AD2d 406, 406 [2d Dept 2002]), but will be reversed where it is against the weight of the evidence (see Matter of McCloskey, 307 AD2d 737, 738 [4th Dept 2003], lv denied 100 NY2d [2003]; Matter of Buckten, 178 AD2d 981, 982 [4th Dept 1991], lv denied 80 NY2d 752 [1992]).
Here, we conclude that the Surrogate's determination with respect to decedent's testamentary capacity is against the weight of the evidence inasmuch as Buck established, through the testimony of decedent's attorney, the paralegal who prepared the will and witnessed its execution, and decedent's caretaker, that decedent possessed testamentary capacity at the time she executed her will (see Burrows, 203 AD3d at 1700). Decedent's attorney testified that, at the time decedent executed the will, she was of "[n]ormal demeanor," was "good with questions," and was able to "confirm . . . what her intentions were." He further testified that he reviewed the will with decedent "paragraph by paragraph." The paralegal similarly testified that decedent was "alert," "seemed okay," and did not appear to be confused at the time she executed her will and that she responded appropriately to questions and indicated that she understood what was in the will. Decedent's caretaker gave similar testimony. Moreover, it is clear that the Surrogate credited the testimony of those disinterested witnesses inasmuch as it concluded, based on their testimony, that the will was properly executed.
We further agree with the Buck Brothers that the Surrogate erred in granting the petition in proceeding No. 2 insofar as it sought rescission of the stock transfer acknowledgments dated January 17, 2011 and May 2011, and we further modify the decree accordingly. We conclude that the Surrogate's determination that those stock transfer acknowledgments should be rescinded for lack of consideration is against the weight of the evidence. Pursuant to the stock transfer acknowledgments, decedent transferred her shares in the Richard M. Buck Construction Corporation to the Buck Brothers "in return for their assumption of the outstanding balance of" a particular bank loan (emphasis added). The documents, on their face, called for the assumption of the balance of the bank loan, not, as determined by the Surrogate, the assumption of a separate personal guaranty executed by decedent. Inasmuch as the language of the stock transfer acknowledgments is subject to only one interpretation, it is unambiguous, and the Surrogate thus erred in relying on outside documentation to conclude that the actual bargained-for benefit was the Buck Brothers' assumption of decedent's personal guaranty (see Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002]). Further, the record is clear that the outstanding balance of the loan was paid off.
We have considered the parties' remaining contentions and have found them to be without merit.
Entered: March 15, 2024
Ann Dillon Flynn
Clerk of the Court